## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN

---

| | |
|---|---|
| Election Integrity Fund, Linda Lee Tarver, Kirklyn Valentine, Jim Miraglia, | Case _____ |
| Plaintiffs, | **Complaint for Declaratory and Injunctive Relief** |
| vs. | |
| City of Lansing and City of Flint, | **Jury Trial Demanded** |
| Defendants. | |

---

The Plaintiffs make the following allegations for their complaint.

### Introduction

Election Integrity Fund and its member-plaintiffs bring this lawsuit against the City of Lansing and the Cities of Lansing and Flint because federal law preempts private federal election grants to cities.  The Center for Tech and Civic Life (CTCL) has essentially created a constitutionally-impermissible public-private partnership with the City of Lansing and the Cities of Lansing and Flint to run its federal elections on November 3, 2020.  CTCL has awarded a $440,000 private federal election grant to the City of Lansing.  CTCL has awarded a $475,625 private federal election grant to the Cities of Lansing and Flint.

To be sure, CTCL is free to directly spend its money to get out the vote in Lansing and Flint; but, federal election law leaves discretion to the "states," not the cities, on how to implement federal elections:

> The specific choices on the methods of complying with the requirements of this subchapter shall be left to the discretion of the State.[1]

In fact, federal election law defines the word "state" to include only the 50 states and territories:

> In this chapter, the term "State" includes the District of Columbia, the Commonwealth of Puerto Rico, Guam, American Samoa, and the United States Virgin Islands.[2]

So, under federal election law, the Cities of Lansing and Flint are not a state.  Not being a state, the Cities of Lansing and Flint are preempted from entering into a public-private partnership with CTCL for federal election administration by receiving CTCL's private federal election grants.

The following federal law preempts the Cities of Lansing and Flint from accepting and using CTCL's private federal election grants: U.S. Constitution's Elections Clause and Supremacy Clause, National Voters Registration Act (NVRA), 52 U.S.C. §§ 20501-20511, Help America Vote Act, 52 USC §§ 20901-21145.  Essentially, federal law requires exclusively-public-funding for federal elections.  Additionally Michigan Statutes § 168.931 commands, "A person shall not, either directly or indirectly, give… valuable consideration, to…any person, … to influence the manner of voting by a person relative to a candidate or ballot question."

Because of the preemptive effects of these laws, the Cities of Lansing and Flint have acted ultra vires, without legal authority, to form a public-private partnership with CTCL for federal election administration by accepting and using CTCL's $475,625 private federal

---

[1] 52 U.S.C § 21085, Pub. L. 107–252, title III, § 305 (Oct. 29, 2002), 116 Stat. 1714.
[2] 52 USC § 21141.

election grant.  The Plaintiffs are entitled to prospective declaratory and injunctive relief enjoining the Cities of Lansing and Flint from accepting and using CTCL's private federal election grants.

## Jurisdiction and Venue

1.      Plaintiffs invoke this Court's jurisdiction under 28 U.S.C. § 1331, authorizing federal-question jurisdiction, for voters' Supremacy Clause claims involving federal election law preemption.  *The League of Women Voters v. Blackwell,* 340 F.Supp.2d 823 (N.D. Ohio 2004).

2.      Plaintiffs invoke this Court's jurisdiction under the private cause of action provided under HAVA, 52 U.S.C. § 21112, because the State of Michigan has failed to provide the federally-required "appropriate remedy" of a timely, pre-election injunction for any person complaining against a Michigan local government forming a public-private partnership for federal election administration by accepting and using private federal election grants.

3.      Venue is proper in this Court under 28 U.S.C. § 1391 because the Defendant is a Michigan municipality, with offices within the Western District of Michigan, and because the events or omissions giving rise to the claims presented occurred within the Western District of Michigan.

## Parties

4.      Election Integrity Fund is a Michigan non-profit corporation.  The Election Integrity Fund is an organization with members who seek to ensure, as part of their association objectives, public confidence in the integrity of Michigan's elections, in election

results and election systems, processes, procedures, and enforcement, and that public officials act in accordance with the law in exercising their obligations to the people of the State of Michigan. The Election Integrity Fund also works to protect the rights of its members whenever laws, statutes, rules, regulations, or government actions that threaten or impede implied or expressed rights or privileges afforded to them under our constitutions or laws or both. Its membership includes candidates seeking elective offices.  The Election Integrity Fund has many members including the individual plaintiffs.

5.       Plaintiff Dr. Linda Lee Tarver is an eligible Michigan voter residing in the City of Lansing. Dr. Tarver has an interest because Dr. Tarver opposes the election of progressive candidates in local, state and federal elections

6.       Plaintiff Kirklyn Valentine is an eligible Michigan voter residing in the City of Flint. Valentine has an interest because Valentine opposes the election of progressive candidates in local, state and federal elections

7.       Plaintiff Jim Miraglia is an eligible Michigan voter residing in the City of Flint. Miraglia has an interest because Miraglia opposes the election of progressive candidates in local, state and federal elections

8.       Defendant City of Lansing is a Michigan municipality.  The City of Lansing is not recognized as a "state" in federal law.

9.       Defendant City of Flint is a Michigan municipality.  The City of Flint is not recognized as a "state" in federal law.

**Standing**

4

10.     The Supremacy Clause confers a private cause of action and legal standing on voters in federal elections to sue state and local governments based on election policies and customs which violate federal election law. *The League of Women Voters v. Blackwell,* 340 F.Supp.2d 823 (N.D. Ohio 2004).

11.     HAVA, 52 U.S.C. § 21112, confers a private cause of action and legal standing on plaintiffs because they fit in the statutory category of "any person who believes that there is a violation of any provision of subchapter III (including a violation which has occurred, is occurring, or is about to occur)."

12.     As to plaintiffs' prospective remedies sought in this Court, HAVA, 52 U.S.C. § 21112, titled "Establishment of State-based administrative complaint procedures to remedy grievances" guarantees an "appropriate remedy" to "any person who believes that there is a violation of any provision of subchapter III (including a violation which has occurred, is occurring, or is about to occur)" of HAVA.

13.     Under section (a) of 52 U.S.C. § 21112, Michigan, having received federal HAVA payments, is "required to establish and maintain State-based administrative complaint procedures which meet the requirements of paragraph (2)." Paragraph (2), among other things, requires that Michigan provide that:

> (F) If, under the procedures, the State determines that there is a violation of any provision of subchapter III, the State shall provide the <u>appropriate remedy</u>.

(Emphasis added.)

14.     However, in this case, Michigan and its Bureau of Elections has failed to provide the federally-required "appropriate remedy" to "any person who believes that there

is… [a HAVA] violation which has occurred, is occurring, or is about to occur" because there is effectively no pre-election injunctive relief allowed in Michigan.

15.     Michigan statutes authorize no one, not even the Michigan Attorney General, to pursue injunctive relief for HAVA violations against Michigan's local governments.

16.     Therefore, Michigan law is legally insufficient to satisfy the federal "appropriate remedy" requirement for "any person" filing a HAVA complaint in Michigan to obtain pre-election injunctive relief.

17.     Because Michigan law does not provide the federally-required "appropriate remedy" under 52 U.S. Code § 21112, plaintiffs have a private cause of action and legal standing under 52 U.S.C. § 21112 to pursue pre-election prospective declaratory and injunctive relief in federal court.

18.     An actual controversy exists between the parties, Election Integrity Fund and the individual plaintiffs who have suffered an injury-in-fact that is directly traceable to the defendants. 28 U.S.C. § 2201.

19.     The plaintiffs are injured by CTCL's private federal elections grants to the City of Lansing, totaling $440,000, in violation of federal law, which ensure legally-authorized, uniform and fair federal elections.

20.     The plaintiffs are injured by CTCL's private federal elections grants to the City of Flint, totaling $475,625, in violation of federal law, which ensure legally-authorized, uniform and fair federal elections.

21.     CTCL's private federal election grants to the Michigan cities tortiously interfere with plaintiffs' legal rights in the Cities of Lansing and Flint under federal law to

legally-authorized, uniform and fair federal elections.  *See The League of Women Voters v. Blackwell,* 340 F.Supp.2d 823 (N.D. Ohio 2004).

22.     A government's election policy favoring demographic groups is an equivalent injury to disfavoring demographic groups. "Parity of reasoning suggests that a government can violate the Elections Clause if it skews the outcome of an election by encouraging and facilitating voting by favored demographic groups." *Young v. Red Clay Consol. Sch. Dist.,* 122 A.3d 784, 858 (Del Ch. 2015).

23.     The plaintiffs do not want progressive candidates to win in the November 3 elections; the plaintiffs are injured by CTCL's private federal election grants because they are targeted to cities with progressive voter patterns—resulting in more progressive votes and a greater chance that progressive candidates will win. *See, id.*

24.      The injury to the plaintiffs is real and concrete.

25.     This Court's favorable decision will redress the plaintiffs' injuries and allow them to enjoy their rights in the Cities of Lansing and Flint to legally-authorized, uniform and fair federal elections guaranteed under federal law.

### Statement of Facts

26.     The Cities of Lansing and Flint are local government in Michigan.

27.     The Cities of Lansing and Flint are not a state under federal law.

28.     The CTCL is a non-profit organization providing federal election grants to local governments.

29.     The CTCL was founded in 2012 by Tiana Epps-Johnson, Donny Bridges, and Whitney May.

30.     The CTCL headquarters is in Chicago, Illinois.

31.     The CTCL states that they are "a team of civic technologists, trainers, researchers, election administration and data experts working to foster a more informed and engaged democracy, and helping to modernize elections."

32.     CTCL's mission on its website includes training public election officials in communication and technology and to inform and mobilize voters.

33.     CTCL's founders – Epps-Johnson, Bridges, and May – all previously worked at the New Organizing Institute (NOI), a center dedicated to training progressive groups and Democratic campaigns in digital campaigning strategies.

34.     NOI's executive director, Ethan Roeder, led the data departments for the Obama presidential campaigns of 2008 and 2012.

35.     Funders of CTCL include progressive groups such as the Skoll Foundation, the Democracy Fund, the John S. and James L. Knight Foundation, and the Rockefeller Brothers Foundation.

36.     CTCL is also associated with Rock the Vote, who despite their non-partisan claims, has regularly featured progressive policies in its efforts to mobilize young people in elections.

37.     Along with Rock the Vote and The Skoll Foundation, CTCL also lists Facebook as a partner in their efforts.

38.     On September 1, Mark Zuckerberg and Priscilla Chan announced their $300 million investment to promote "safe and reliable voting in states and localities." See Exhibit B.

39.    Of that $300 million, $250 million is going toward CTCL and private federal election grants to counties and cities.

40.    CTCL, as a progressive organization, targets urban cities for its private federal election grants to turn out the progressive vote in the urban cities.

**CTCL's 2020 private federal elections grant application process.**

41.    CTCL markets to local election offices the federal election grants as "COVID-19 response grants":

> We provide funding to U.S. local election offices to help ensure they have the critical resources they need to safely serve every voter in 2020. See Exhibit A.

42.    CTCL states that it intends to award $250,000,000 of private federal election grants to local election offices for the November 3, 2020 elections and provides an application link to apply for the CTCL's private federal election grants.

> The Center for Tech and Civic Life (CTCL) is excited to expand our COVID-19 Response Grant program to all U.S. local election jurisdictions. Backed by a generous $250M contribution, CTCL will provide grants to local election jurisdictions across the country to help ensure you have the staffing, training, and equipment necessary so this November every eligible voter can participate in a safe and timely way and have their vote counted.
>
> **APPLY FOR A COVID-19 GRANT**
>
> The deadline to apply is October 1, 2020. Questions about the COVID-19 grant application or process? Email us at help@techandciviclife.org.

See https://www.techandciviclife.org/our-work/election-officials/grants/.

43.    CTCL, on its website, states that it will take about 45 minutes for the local election officials to gather information and fill out the application for CTCL's private federal election grants:

**CTCL COVID-19 Response Grant Application**

We estimate it will take approximately 30 minutes to gather and prepare the materials needed to complete the COVID-19 Response Grant Application. We then expect that it will take approximately 15 minutes to complete the grant application questions below.

For an overview of what to expect when completing the grant application, including the materials you'll need to submit, visit https://www.techandciviclife.org/grants/

After submission of this information, CTCL may ask for additional information to help determine if your jurisdiction qualifies for a grant. CTCL reserves the right to verify with third party sources any information that you provide. By submitting this application, you consent to the collection of the information you submit, which may be used for the purposes described in CTCL's Privacy Policy.

- Who is completing this grant application? *
  <br>[_____] First Name [_____] Last Name
- What is your title? *
  <br>[_____]

- Please select the state and office (or official) you are applying on behalf of. *
- *NOTE: We are unfortunately not able to grant to election administrators in American Samoa or Guam under local law.*
- What type of jurisdiction are you submitting an application on behalf of? *
  <br>○ County  ○ City  ○ Village  ○ Town  ○ Township  ○ State or Territory
  <br>○ [_____]

- I certify that I am permitted to submit this grant request on behalf of the jurisdiction listed above. *
  <br>☐ Yes
- *If you are unsure who is permitted to make grant requests on behalf of your jurisdiction, we encourage you to consult your county or city attorney.*
- Your initials *
  <br>[_____] Initials of Requester
- Today's Date
  <br>[ 09-15-2020 ] Date

https://form.jotform.com/202445110530135

44.     CTCL, on its website, answers the question "Why is CTCL providing grants

to election offices?":

Election officials have made it clear that one of their most pressing needs is funding. Based on this, CTCL is focusing philanthropic support to directly help election offices administer safe and secure elections in November.

See https://www.techandciviclife.org/our-work/election-officials/grants/.

45.     CTCL, on its website, answers the question "Who is providing the grant?":

CTCL is a publicly supported 501(c)(3) nonprofit organization. CTCL is proud to have a healthy mix of financial support from foundations, individual donors, and through earned revenue. By law, CTCL's financial 990s are available for public review. Grant funds will be disbursed from the Center for Tech and Civic Life.

See https://www.techandciviclife.org/our-work/election-officials/grants/.

46.     CTCL, on its website, answers the question "What kind of election expenses

do the grant funds cover?":

Election offices can use the funds to cover certain 2020 expenses incurred between June 15, 2020 and December 31, 2020. These include, but are not limited to, the costs associated with the safe administration of the following examples of election responsibilities.

**Ensure Safe, Efficient Election Day Administration**

- Maintain open in-person polling places on Election Day
- Procure Personal Protective Equipment (PPE) and personal disinfectant to protect election officials and voters from COVID-19
- Support and expand drive-thru voting, including purchase of additional signage, tents, traffic control, walkie-talkies, and safety measures

**Expand Voter Education & Outreach Efforts**
- Publish reminders for voters to verify and update their address, or other voter registration information, prior to the election
- Educate voters on safe voting policies and procedures

**Launch Poll Worker Recruitment, Training & Safety Efforts**

- Recruit and hire a sufficient number of poll workers and inspectors to ensure polling places are properly staffed, utilizing hazard pay where required
- Provide voting facilities with funds to compensate for increased site cleaning and sanitization costs

- Deliver updated training for current and new poll workers administering elections in the midst of pandemic

**Support Early In-Person Voting and Vote by Mail**

- Expand or maintain the number of in-person early voting sites
- Deploy additional staff and/or technology improvements to expedite and improve mail ballot processing

See https://www.techandciviclife.org/our-work/election-officials/grants/.

47.      CTCL, on its website, answers the question "How do I know that my office is

eligible to receive a grant?":

> If your U.S. election office is responsible for administering election activities covered by the grant, you're eligible to apply for grant funds.

See https://www.techandciviclife.org/our-work/election-officials/grants/.

48.      CTCL, on its website, answers the question "How much money is my office

eligible to apply for?":

> Your election office will be eligible to apply for a grant amount based on a formula that considers the citizen voting age population and other demographic data of your jurisdiction. Minimum grants will be $5,000. You may choose to receive less than the offered amount if your needs or eligible expenses do not reach that amount.

See https://www.techandciviclife.org/our-work/election-officials/grants/.

49.      CTCL, on its website, answers the question "What if I share election

responsibilities with another local government office?":

> If you share election responsibilities with another local government office, you are encouraged to submit one combined application for grant funds. This means you'll coordinate with your other local government offices.

See https://www.techandciviclife.org/our-work/election-officials/grants/.

50. CTCL, on its website, answers the question "What information does my office need to provide in the grant application?":

> You will need to provide the following information in your grant application:
> - Number of active registered voters in the election office jurisdiction as of September 1, 2020
> - Number of full-time staff (or equivalent) on the election team as of September 1, 2020
> - Election office 2020 budget as of September 1, 2020
> - Election office W-9
> - Local government body who needs to approve the grant funding (if any)
> - What government official or government agency the grant agreement should be addressed to

See https://www.techandciviclife.org/our-work/election-officials/grants/.

51. CTCL, on its website, answers the question "Who should submit the application for my election office?":

> Your election office's point of contact for the grant should submit the grant application. We leave it to you to determine who should be the point of contact.

See https://www.techandciviclife.org/our-work/election-officials/grants/.

52. CTCL, on its website, answers the question "When can I submit my application?":

> You'll be able to submit your grant application beginning the week of Tuesday, September 8, 2020.

See https://www.techandciviclife.org/our-work/election-officials/grants/.

53. CTCL, on its website, answers the question "When will my office receive the grant?":

> We recognize that election jurisdictions need funding as soon as possible to cover the unprecedented expenses of 2020 elections. We plan to move quickly! After you submit your application, CTCL anticipates that the

certification and approval of your grant will take about 2 weeks. The disbursement timeline will depend on your local approval process.

See https://www.techandciviclife.org/our-work/election-officials/grants/.

54.     CTCL, on its website, answers the question "Will the grant be mailed via check or transferred via wire?":

Wiring the grant funds is faster, but you can receive the funds via a mailed check if preferred.

See https://www.techandciviclife.org/our-work/election-officials/grants/.

55.     CTCL, on its website, answers the question "What reporting is required?":

You will be required to submit a report that indicates how you spent the grant funds. The report will be in a format that should not be overly burdensome.

See https://www.techandciviclife.org/our-work/election-officials/grants/.

56.     CTCL, on its website, answers the question "When do I report how my office spent the funds?":

You'll need to submit your grant report by January 31, 2021.

See https://www.techandciviclife.org/our-work/election-officials/grants/.

**CTCL's 2020 private federal election grants**

57.     In 2020, CTCL has provided private federal election grants to cities and counties in at least Michigan, Pennsylvania, Wisconsin, Minnesota, South Carolina and Georgia.

58.     All these states have something in common: state legislatures who will not accept CTCL's private federal elections grants.

59.     So, CTCL, to accomplish its objective of turning out progressive votes in the urban cities, has circumvented these state legislatures by recruiting local governments to apply and agree to accept CTCL's private federal election grants.

60.     CTCL's private federal election grants to counties and cities in Michigan, Pennsylvania, Wisconsin, Minnesota, South Carolina and Georgia were not approved by Congress nor by the respective state legislatures.

61.     CTCL recently provided a $10 million private federal election grant to the City of Philadelphia.  The $10 million is to apportioned as follows:

1. $5.5 million towards materials and processing equipment for mail-in and absentee voting
2. $2.27 million towards satellite election offices for in-person mail-in voting
3. $1.32 million towards in-person voting at polling places on election day
4. $552,000 for secure dropboxes and other needs
5. $370,000 for printing, postage, and other needs

62.     CTCL's private federal election grant to Philadelphia was not approved by Congress nor by the Pennsylvania state legislature.

63.     Similarly, recently, CTCL awarded its $400,000 private federal election grant to the City of Lansing and awarded its $475,625 private federal election grant to the Cities of Lansing and Flint.

64.     CTCL's private federal election grants to Lansing and Flint were not approved by Congress nor by the Michigan state legislature.

**CTCL's private federal election grants are to increase voter participation in the Cities of Lansing and Flint which can be accomplished without creation of a public-private partnership regarding Lansing's and Flint's election administration.**

65.     CTCL's private federal election grants are to increase voter participation in the Cities of Lansing and Flint.

66.     CTCL's goal of increasing voter participation in the Cities of Lansing and Flint can be accomplished without the funding through the Cities of Lansing and Flint.

67.     Instead, CTCL could spend the funds directly on get-out-to-vote (GOTV) efforts like other non-profits do.

68.     Therefore, for CTCL to accomplish its goal of increasing voter participation in the Cities of Lansing and Flint, it is unnecessary for there to be a public-private partnership between CTCL and the Cities of Lansing and Flint regarding Lansing's and Flint's election administration.

## COUNT I

**The Cities of Lansing and Flint act ultra vires, without legal authority, to form a public-private partnership for federal election administration with CTCL by accepting and using CTCL's private federal election grant, because preemption applies under the Elections Clause, Supremacy Clause, HAVA, and NVRA.**

69.     The Plaintiffs incorporate this complaint's previous paragraphs.

70.     The Cities of Lansing and Flint act ultra vires, without legal authority, to form a public-private partnership for federal election administration with CTCL by accepting and using CTCL's private federal election grant, because preemption applies under the Elections Clause, Supremacy Clause, HAVA, and NVRA.

71.     The Center for Tech and Civic Life (CTCL) has distributed or is about to distribute a private federal election grants, totaling $440,000, to the City of Lansing.

72.     The Center for Tech and Civic Life (CTCL) has distributed or is about to distribute a private federal election grants, totaling $475,625, to the City of Flint.

73. But, HAVA left discretion to the "states," not the cities, on how to implement federal elections:

> The specific choices on the methods of complying with the requirements of this subchapter shall be left to the discretion of the State.[3]

74. Federal election law defines the word "state":

> In this chapter, the term "State" includes the District of Columbia, the Commonwealth of Puerto Rico, Guam, American Samoa, and the United States Virgin Islands.[4]

75. So, under federal election law, the Cities of Lansing and Flint are not a "state."

76. Accordingly, the Cities of Lansing and Flint have no legal authority to form public-private partnerships for federal election administration nor to accept and use private federal election grants.

77. The following federal law and state law preempt the Michigan cities from accepting and using private federal election grants: U.S. Constitution's Elections Clause and Supremacy Clause, National Voters Registration Act (NVRA), 52 U.S.C. §§ 20501-20511, Help America Vote Act, 52 USC §§ 20901-21145, and Michigan Statutes § 168.931

78. Because of the preemptive effects of these laws, the Cities of Lansing and Flint act ultra vires, without legal authority, to accept and use CTCL's private federal election grants and to create the public-private partnership with CTCL.

79. The Plaintiffs are entitled to prospective declaratory and injunctive relief.

---

[3] 52 U.S. Code § 21085, Pub. L. 107–252, title III, § 305 (Oct. 29, 2002), 116 Stat. 1714.

[4] 52 USC § 21141.

80.    Specifically, the following laws preempt Lansing's and Flint's actions of

approving and using CTCL's private federal election grants.

**U.S. Constitution's Elections Clause and Supremacy Clause**

81.    The U.S. Constitution, Article I's Elections Clause and Article VI's Supremacy

Clause preempts CTCL's private federal elections grants to local governments.

82.    The Elections Clause states:

> Time, place, and manner of holding. The Times, Places and Manner of
> holding Elections for Senators and Representatives, shall be prescribed in each
> State by the Legislature thereof; but the Congress may at any time by Law
> make or alter such Regulations, except as to the Places of chusing [sic]
> Senators.

U.S. Constitution, Art. I, section 4, clause 1.

83.    The Supremacy Clause states:

> This Constitution, and the Laws of the United States which shall be made in
> Pursuance thereof; and all Treaties made, or which shall be made, under the
> Authority of the United States, shall be the supreme Law of the Land; and the
> Judges in every State shall be bound thereby, any Thing in the Constitution or
> Laws of any State to the Contrary notwithstanding.

U.S. Constitution, Art. VI, para. 2.

84.    The Elections Clause, as applied here, ensures that the federal government

and state legislatures determine the time, place and manner of federal elections—not CTCL

and local governments.

85.    The Supremacy Clause, as applied here, ensures that local governments do not

act contrary to federal and state law regarding federal elections.

86.    The Elections Clause and Supremacy Clause preempt CTCL's private federal

election grants to local governments.

87.     CTCL's private federal election grants are not legally authorized by federal law nor state law.

88.     The Cities of Lansing and Flint have acted ultra vires, without legal authority, in accepting and using CTCL's private federal election grants and forming the public-private partnership with CTCL for federal election administration.

**Lansing's and Flint's CTCL private federal elections grant constitute constitutionally-impermissible public-private partnership.**

89.     Lansing's and Flint's CTCL private federal elections grants constitute a constitutionally-impermissible public-private partnership.

90.     The case law shows that Lansing's and Flint's CTCL private federal election grants are in a subject area, federal election administration, where public-private partnerships are constitutionally impermissible.

91.     The federal courts have a tradition in different subject areas of drawing a line where public-private partnerships are constitutionally impermissible. Federal elections are a subject where the federals should hold that private-public partnerships are constitutionally impermissible.

92.     In *Board of Education of Kiryas Joel Village School District v. Grumet*, 512 U.S. 687 (1994), the U.S. Supreme Court drew such a line finding a public-private partnership constitutionally impermissible. In *Kiryas*, the New York legislature sought to create a homogenous school district for Satmar Hasidic Jews and did so by statute.  This "religious" motive was improper for the state and the statute forming the new district was stuck down.  *Id.* at 691.

93.     Similarly, in *Ferguson v. City of Charleston*, 532 U.S. 67, 81-86 (U.S. 2001), the U.S. Supreme Court held another public-private partnership unconstitutionally impermissible.  Here, the local prosecutor, concerned about crack babies, teamed up with the local hospital to develop a program seeking to prevent expecting mothers from using cocaine during the pregnancy.  They developed a program where the hospital would test for the presence of cocaine and provide a program to help with abstinence.  If the patient refused, the results were shared with the prosecutor's office which in turn would encourage participation at the threat of prosecution.  The U.S. Supreme Court found the entanglement of public and private interests sufficient to conclude the blood test by the hospital was a Fourth Amendment violation by the state.  *Id.* at 86.

94.     Similarly, the entanglement of public and private interests involved with the Cities of Lansing and Flint accepting and using CTCL's private federal election grant is unconstitutional impermissible.

95.     The idea of the federal and state government exclusively funding federal elections is to eliminate undue influence and the appearance of undue influence by private parties.

96.     CTCL's private funding of federal elections re-introduces undue influence and the appearance of undue influence into federal elections—which is constitutionally impermissible.

**Help America Vote Act (HAVA)**

97.     The Help America Vote Act (HAVA), 52 USC § 209, preempts CTCL's private federal election grants for the following reasons.

98.    HAVA established the Election Assistance Commission (EAC) to assist the states regarding HAVA compliance and to distribute HAVA funds to the states.

99.    EAC is also charged with creating voting system guidelines and operating the federal government's first voting system certification program.

100.   EAC is also responsible for maintaining the National Voter Registration form, conducting research, and administering a national clearinghouse on elections that includes shared practices, information for voters and other resources to improve elections.

101.   HAVA requires that the states implement the following new programs and procedures:

- Provisional Voting
- Voting Information
- Updated and Upgraded Voting Equipment
- Statewide Voter Registration Databases
- Voter Identification Procedures
- Administrative Complaint Procedures

In the past, Michigan's HAVA plan, required by HAVA, was approved by the EAC.

102.   HAVA's purpose was to coordinate federal and state administration of federal elections.

103.   HAVA does not legally authorize local governments to accept private federal election grants.

104.   HAVA's preemption prohibits local governments from accepting private federal election grants.

105.   Under HAVA, the EAC is to be bi-partisan and work with all the states in a bi-partisan way.

21

106.    The CTCL's private federal election grants circumvent the EAC and the states and thus conflict with HAVA.

107.    Under HAVA, the EAC and the states work toward election plans and budgets.

108.    CTCL's private federal election grants to local governments lead to deviations from the federally-approved and state-approved election administration plans and budgets—thus, conflicting with HAVA.

109.    The federal and state money distributed to county and city clerks that administer elections are distributed pursuant to a legally-authorized method, that is approved by the states under the guidance of EAC, so the counties and cities receive a state-approved share for election purposes.

110.    But, local governments accepting CTCL's private federal election grants, violate HAVA by injecting money into federal elections which is not approved by the EAC or the states.

111.    States are not allowed to deviate from plans submitted under HAVA. Local governments accepting CTCL's private federal election grants, violate HAVA.

112.    The CTCL's private federal election grants to local governments are not part of HAVA.

113.    Michigan, consistent with HAVA and under the EAC's guidance, has already approved a fiscal plan for its elections.  The CTCL's private federal election grants to the Michigan's cities circumvents and violates that fiscal plan.

114.     In Michigan, it is too late for the state to modify its plan around CTCL's private federal election grants to ensure the legally-authorized, uniform and fair election HAVA requires.

115.     The Supremacy Clause, as applied to HAVA, ensures that Michigan cities do not act contrary to HAVA regarding federal elections.

116.     HAVA preempts CTCL's private federal election grants to the cities.

117.     Under the Supremacy Clause and HAVA, CTCL's private federal election grants are not legally authorized by federal law or state law.

118.     The Cities of Lansing and Flint have acted ultra vires, without legal authority, in accepting and using CTCL's private federal election grant and forming the public-private partnership with CTCL for federal election administration.

**National Voters Registration Act (NVRA)**

119.     National Voters Registration Act (NVRA), 52 U.S.C. §§ 20501–20511, preempts CTCL's private federal election grants for the following reasons.

120.     Congress enacted the National Voter Registration Act of 1993 (also known as the "Motor Voter Act"), to create "national procedures for voter registration for elections for Federal office."  52 U.S.C. § 20503.

121.     The Act gave responsibility to the Federal Election Commission (FEC) to provide States with guidance on the Act, to develop a national mail voter registration form, and to compile reports on the effectiveness of the Act. A 2002 amendment in HAVA transferred the FEC's responsibilities under the Act to the EAC.

122.    Section 5 of the NVRA requires states to provide individuals with the opportunity to register to vote at the same time that they apply for a driver's license or seek to renew a driver's license, and requires the State to forward the completed application to the appropriate state or local election official.  52 U.S.C. § 20504.

123.    Section 6 of the NVRA provides that citizens can register to vote by mail using mail-in-forms developed by each state and the Election Assistance Commission. 52 U.S.C. § 20505.

124.    Section 7 of the NVRA requires states to offer voter registration opportunities at all offices that provide public assistance and all offices that provide state-funded programs primarily engaged in providing services to persons with disabilities. Each applicant for any of these services, renewal of services, or address changes must be provided with a voter registration form of a declination form as well as assistance in completing the form and forwarding the completed application to the appropriate state or local election official. 52 U.S.C. § 20506.

125.    Section 8 of the NVRA also creates requirements for how States maintain voter registration lists for federal elections. 52 U.S.C. § 20507.

126.    NVRA's purpose was to coordinate federal and state administration of voter registration for federal elections and to create legally-authorized, nationwide, and uniform standards for voter registration.

127.    NVRA does not legally authorize local governments to accept private federal election grants for voter registration.

128.    NVRA's preemption prohibits local governments from accepting private federal election grants for voter registration.

129.    Under NVRA, the EAC is to be bi-partisan and work with all the states in a bi-partisan way on voter registration for federal elections.

130.    The CTCL's private federal election grants circumvent the EAC and the states and thus conflicts with NVRA.

131.    Under NVRA, the EAC and the states work toward voter registration plans and budgets.

132.    CTCL's private federal election grants to local governments lead to deviations from the federally-approved and state-approved election voter registration administration plans and budgets—thus, conflicting with NVRA.

133.    The federal and state money distributed to county and city clerks that conduct voter registration are distributed pursuant to a legally-authorized method, that is approved by the states under the guidance of EAC, so the counties and cities receive a state-approved share for voter registration.

134.    But, local governments accepting CTCL's private federal election grants, violate NVRA by injecting money into federal election voter registration which is not approved by the EAC or the states.

135.    States are not allowed to deviate from the NVRA. Local governments accepting CTCL's private federal election grants, violate NVRA.

136.    The CTCL's private federal election grants to local governments are not part of NVRA.

137.    Michigan, consistent with NVRA and under the EAC's guidance, has already approved a fiscal plan for voter registration for federal elections.  The CTCL's private federal election grants to the Michigan's cities circumvent and violate that fiscal plan.

138.    In Michigan, it is too late for the state to modify its plan in response to CTCL's private federal election grants to ensure the legally-authorized, uniform and fair election NVRA requires.

139.    The Supremacy Clause, as applied to NVRA, ensures that Michigan cities do not act contrary to NVRA regarding federal elections.

140.    NVRA preempts CTCL's private federal election grants to the cities.

141.    Under the Supremacy Clause and NVRA, CTCL's private federal election grants are not legally authorized by federal law or state law.

142.    The Cities of Lansing and Flint have acted ultra vires, without legal authority, in accepting and using CTCL's private federal election grants and forming the public-private partnership with CTCL for federal election administration.

**Michigan Statutes § 168.931 prohibits election bribery**

143.    Michigan Statutes § 168.931 is violated by CTCL's private federal election grants to cities.

144.    Michigan election officials accepting and using CTCL's private federal election grants violate Michigan Statutes § 168.931's prohibition on election bribery.

145.    Section § 168.931 prohibits public officials from receiving money to induce a voter to vote in an election.

146.    Michigan Statutes § 168.931 states:

(1) A person who violates 1 or more of the following subdivisions is guilty of a misdemeanor:
(a) A person shall not, either directly or indirectly, give… valuable consideration, to…any person, … to influence the manner of voting by a person relative to a candidate or ballot question…

147.   It is a misdemeanor under § 168.931 for public officials in the Cities of Lansing and Flint to accept and use CTCL's private federal election grant without a state legislative enactment approving it.

148.   Michigan Statutes § 168.931 preempts CTCL's private federal election grants to the Cities of Lansing and Flint.

149.   CTCL's private federal election grants to the Cities of Lansing and Flint are not legally authorized under Michigan Statutes § 168.931.

150.   The Cities of Lansing and Flint have acted ultra vires, without legal authority, in accepting and using CTCL's private federal election grants.

## Demand for Jury Trial

151.   Plaintiffs demand a jury trial.

## Prayer for Relief

Therefore, the Plaintiffs respectfully ask that this Court to:

1.   Grant declaratory relief that the Cities of Lansing and Flint haves acted ultra vires, without legal authority, in accepting CTCL's private federal election grants and forming the public-private partnership with CTCL for federal election administration.

2.      Issue an injunction enjoining the Cities of Lansing and Flint from accepting or using CTCL's private federal election grants and from forming a public-private partnership with CTCL for federal election administration.

3.      Award the Plaintiffs all costs, expenses, and expert witness fees allowed by law;

4.      Award the Plaintiffs attorneys' fees and costs allowed by law; and

5.      Award the Plaintiffs such other and further relief as this Court deems just.

Dated:  September 29, 2020

_____*/s/ Erick G. Kaardal*_____
Erick G. Kaardal, No. 1035141
Special Counsel to Amistad Project
of the Thomas More Society
Mohrman, Kaardal & Erickson, P.A.
150 South Fifth Street, Suite 3100
Minneapolis, Minnesota 55402
Telephone: 612-341-1074
Facsimile:  612-341-1076
Email:  kaardal@mklaw.com


_____*/s/ Ian A. Northon*_____
Ian A. Northon
Rhoades McKee
55 Campau Avenue NW, Suite 300
Grand Rapids, Michigan  49503
Tel:    616.233.5125
Email:inorthon@rhoadesmckee.com

*Attorneys for Plaintiffs*