### UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF MICHIGAN

ELECTION INTEGRITY FUND,             Case No. 1:20-cv-00950
LINDA LEE TARVER,                    Honorable Paul L. Mahoney
KIRKLYN VALENTINE, and          Magistrate Judge Ray Kent
JIM MIRAGLIA,

            Plaintiffs,               **ORAL ARGUMENT REQUESTED**

v.

CITY OF LANSING and CITY OF FLINT,

            Defendants.

_____

### DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

Defendants City of Lansing and City of Flint, through counsel, pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6) move to dismiss Plaintiffs' amended complaint for the reasons set forth in the accompanying brief in support.

Pursuant to W.D. Mich. LR 7.1(d), Defendants sought concurrence in the relief sought through this motion, but concurrence was denied.

                       Respectfully Submitted,

By:     /s/ *Christopher M. Trebilcock*
           Christopher M. Trebilcock (P62101)
           Vincent C. Sallan (P79888)
           CLARK HILL PLC
           500 Woodward Avenue – Suite 3500
           Detroit, Michigan 48226
           (313) 965-8300
           ctrebilcock@clarkhill.com
           vsallan@clarkhill.com
           *Attorneys for Defendants*

DATE:  December 4, 2020

## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

ELECTION INTEGRITY FUND,                    Case No. 1:20-cv-00950
LINDA LEE TARVER,                           Honorable Paul L. Mahoney
KIRKLYN VALENTINE, and                      Magistrate Judge Ray Kent
JIM MIRAGLIA,

        Plaintiffs,                **ORAL ARGUMENT REQUESTED**

v.

CITY OF LANSING and CITY OF FLINT,

        Defendants.

---

## BRIEF IN SUPPORT OF DEFENDANTS'
## MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ..................................................................................................................1

BACKGROUND ..................................................................................................................2

I.      Factual Background ..................................................................................................2

II.     Procedural Background............................................................................................3

LEGAL STANDARD............................................................................................................5

ARGUMENT ......................................................................................................................6

I.      This Court lacks subject-matter jurisdiction over Plaintiffs' claims under Rule 12(B)(1) ....6

    A.    Plaintiffs' claim for declaratory and injunctive relief are moot.....................................6

    B.    Plaintiffs lack Article III standing.................................................................................7

        1.    Plaintiffs fail to allege injury-in-fact................................................................8

        2.    Any injury is not "fairly traceable" to CTCL's grants...........................................12

        3.    The relief Plaintiffs request would not redress their claimed harm .......................12

II.     The amended complaint should be dismissed for failure to state a claim under Rule 12(b)(6) ......13

    A.    Plaintiffs' legal theory under Count I fails to state a claim under the Elections Clause, the First and Ninth Amendments, or federal common law ...........................................13

    B.    Plaintiffs fail to state a claim under the Fourteenth Amendment .................................17

CONCLUSION....................................................................................................................20

ClarkHill\94009\415302\261416224-12/4/20

## <u>INDEX OF AUTHORITIES</u>

**<u>Cases</u>**

*Anderson v. Celebrezze,*
   460 U.S. 780 (1983) .................................................................................................16

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ...................................................................................................5

*Arizona v. Inter Tribal Council,*
   570 U.S. 1 (2013) .....................................................................................................14

*Atherton v. FDIC,*
   519 U.S. 213 (1997) .................................................................................................17

*Bassett v. Nat'l College Athletic Ass'n.,*
   528 F.3d 426 (6th Cir. 2008) .................................................................................2, 5

*Bullock v. Carter,*
   405 U.S. 134 (1972) .................................................................................................20

*Burdick v. Takushi,*
   504 U.S. 428 (1992) ...........................................................................................15, 19

*Clapper v. Amnesty Int'l. USA,*
   568 U.S. 398 (2013) .................................................................................................11

*Cook v. Gralike,*
   531 U.S. 510 (2001) .................................................................................................14

*Cooper Butt ex rel Q.T.R. v. Barr,*
   954 F.3d 901 (6th Cir. 2020) ...................................................................................16

*Davis v. Detroit Pub. Schs. Cmty. Dist.,*
   899 F.3d 437 (6th Cir. 2018) .....................................................................................9

*Davis v. Prison Health Servs.,*
   679 F.3d 433 (6th Cir. 2012) ...................................................................................17

*DeFunis v. Odegaard,*
   416 U.S. 312 (1974) ...................................................................................................7

*Donald J. Trump for President, Inc. v. Boockvar,*
   No. 20 Civ. 966, 2020 WL 5997680 (W.D. Pa. Oct. 10, 2020) ........................18, 19

*Donald J. Trump for President, Inc. v. Pennsylvania,*
   No. 20-3371, 2020 WL 7012522 (3d Cir. Nov. 27, 2020) .......................................19

*Election Integrity Fund v. City of Lansing,*
   No. 20-2048 (6th Cir. Oct. 30, 2020) ...........................................................5, 8, 12

*Erie R. Co. v. Tompkins,*
   304 U.S. 64 (1938) ...................................................................................................17

*Gibson v. Matthews,*
   926 F.2d 532 (6th Cir. 1991) ...................................................................................16

*Gill v. Whitford,*
   138 S. Ct. 1916 (2018) ........................................................................................10, 12

*Havens Realty Corp. v. Coleman,*
   455 U.S. 363 (1982) .................................................................................................13

*Hunter v. Hamilton Cty. Bd. of Elections,*
   635 F.3d 219 (6th Cir. 2011) ...................................................................................18

*Laborers' Local 265 Pension Fund v. iShares Tr.*,
769 F.3d 399 (6th Cir. 2014) .................................................................................5

*Lance v. Coffman*,
549 U.S. 437 (2007).............................................................................................9

*Little Traverse Bay Bands of Odawa Indians v. Whitmer*,
365 F. Supp. 3d 865 (W.D. Mich. 2019) .........................................................2, 6

*Lozar v. Birds Eye Foods, Inc.*,
678 F. Supp. 2d 589 (W.D. Mich. 2009) ...............................................................6

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)...............................................................................8, 12, 13

*Marion Cty. Democratic Party v. Marion Cty. Election Bd.*,
No. 01 Civ. 1963, 2002 WL 1354717 (S.D. Ind. May 9, 2002) .....................18

*McDonald v. Bd. of Election Comm'rs of Chicago*,
394 U.S. 802 (1969)...........................................................................................20

*Minnesota Voters Alliance v. City of Minneapolis*,
No. 0:20-cv-2049 (D. Minn. Oct. 16, 2020) ...................................................10

*Obama for Am. v. Husted*,
697 F.3d 423 (6th Cir. 2012)  ...........................................................17, 18, 19, 20

*Pennsylvania Voters Alliance v. Cty. of Centre*,
No. 20-3175 (3d Cir. Nov. 23, 2020).........................................8, 9, 10, 11, 12

*Pettrey v. Enter. Title Agency, Inc.*,
584 F.3d 701 (6th Cir. 2009) .................................................................................6

*Republic Bank & Tr. Co. v. Bear Stearns & Co.*,
683 F.3d 239 (6th Cir. 2012) ...............................................................................11

*Richards v. Snyder*,
No. 14 Civ. 84, 2015 WL 3658836 (W.D. Mich. June 12, 2015)..................16

*RMI Titanium Co. v. Westinghouse Elec. Corp.*,
78 F.3d 1125 (6th Cir. 1996) .................................................................................6

*Scarbrough v. Morgan Cty. Bd. of Educ.*,
470 F.3d 250 (6th Cir. 2006) ...............................................................................17

*Shoemaker v. City of Howell*,
795 F.3d 553 (6th Cir. 2015) ...............................................................................20

*Short v. Brown*,
893 F.3d 671, 679 (9th Cir. 2018) .....................................................................18

*South Carolina Voter's Alliance v. Charleston Cty.*,
No. 2:20-cv-3710 (D.S.C. Oct. 26, 2020).........................................................12

*Strandberg v. City of Helena*,
791 F.2d 744 (9th Cir. 1986) ...............................................................................16

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014)...............................................................................................7

*Texas Voters Alliance v. Dallas Cty.*,
No. 20 Civ. 775 (E.D. Tex. Oct. 20, 2020).................................................10, 11

*Warf v. Bd. of Elections of Green Cty.*,
619 F.3d 553 (6th Cir. 2010) ...............................................................................19

*Warth v. Seldin*,
422 U.S. 490 (1975)...........................................................................................13

*Wexler v. Anderson*,
    452 F.3d 1226 (11th Cir. 2006) ................................................................18
*Wisconsin Voters Alliance v. City of Racine*,
    No 20A-75 (U.S. Oct. 29, 2020) ...........................................................8, 12

**Rules and Statutes**

Rule 12(b)(1)  ....................................................................................6, 13, 20

Rule 12(b)(6)  ...........................................................................2, 5, 6, 13, 20

**Other Authority**

U.S. Const. art. I, § 4, cl. 1..........................................................................14

Lansing City Council Agenda 9/14/20 ................................................2, 3, 15

Flint City Council Agenda 9/16/20..................................................2, 3, 15

Draft Minutes, Nov. 23, 2020 Meeting of the Board of State Canvassers ....................................3

Certificate of Ascertainment .........................................................................3

ClarkHill\94009\415302\261416224-12/4/20

**INTRODUCTION**

Facing the unprecedented challenge of administering a federal election during a pandemic, the Cities of Flint and Lansing (along with thousands of other local governments around the country, including hundreds in Michigan) requested and received grants from the nonpartisan, non-profit Center for Tech and Civic Life ("CTCL") to ensure that the cities could carry out their duty to administer the election safely and effectively for voters, election workers, and the public.

Plaintiffs have spent the last two months trying to stymie those efforts without any success. Throughout the country and at every level of the federal judiciary, courts, including this one, have consistently rejected this and other nearly identical suits brought by the same plaintiffs' counsel on behalf of similar plaintiffs in a handful of other jurisdictions.

Now, with Election Day over, Plaintiffs attempt to resurrect their case once more. They have amended their complaint with yet more claims challenging Flint and Lansing's acceptance and use of CTCL's grants, alleging new theories of harm under a new hodgepodge of constitutional provisions. But this latest effort, like their previous efforts, lacks any basis in law or fact. Plaintiffs still lack standing to pursue their claims. Their requested relief—an injunction preventing acceptance and use of the grants and a declaratory judgment—is moot. And on the merits, their novel, convoluted arguments for why CTCL's grants are unlawful fail to state a plausible claim for relief. This Court should dismiss the Amended Complaint.

1

# BACKGROUND

## I. Factual Background[1]

CTCL is a private non-profit organization that provides federal election grants to local governments. Am. Compl. ¶ 12. In 2020, CTCL distributed approximately $350 million to local governments through an emergency-response program to fund election administration during the COVID-19 pandemic. Am. Compl. ¶ 13. Defendants the City of Lansing and the City of Flint were two among thousands of jurisdictions around the country (and hundreds in Michigan) who received grants from CTCL.

The nature of the grants is straightforward, as the public record reflects.[2] Lansing and Flint designed comprehensive Safe Voting Plans to ensure that, even during the pandemic, their voters could vote safely, securely, and efficiently. CTCL awarded Lansing $443,742 in grant funds to cover the cost of implementing the plan. Lansing Council Agenda 9/14/20 at 25. CTCL awarded

---

[1] For purposes of this motion to dismiss, Defendants accept the well-pleaded factual allegations in the Amended Complaint as true and draw reasonable inferences in Plaintiffs' favor. Defendants also rely on certain public records and materials referenced in, and central to, the claims in the Amended Complaint—in particular, Defendants' legislative actions approving the acceptance of the grant funds and the terms of the grants (the "Grant Agreements") themselves. The Court may properly consider those materials without converting this motion to dismiss into a motion for summary judgment. *See Bassett v. Nat'l College Athletic Ass'n.*, 528 F.3d 426, 430 (6th Cir. 2008) ("When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims therein."); *Little Traverse Bay Bands of Odawa Indians v. Whitmer*, 365 F. Supp. 3d 865, 872 (W.D. Mich. 2019) (Maloney, J.).

[2] Both cities have publicly posted online their grant award letter from CTCL, which includes the terms of the grant, as part of the public records of City Council meetings. *See* Lansing City Council at 25-26, Agenda for Sept. 14, 2020, https://www.lansingmi.gov/AgendaCenter/ViewFile/Agenda/_09142020-3183 ("Lansing Council Agenda 9/14/20"); Flint City Council at 39-40, Agenda for Sept. 16, 2020, https://www.cityofflint.com/wp-content/uploads/Agenda-Packet-City-Council-9-16-20-Part-1.pdf ("Flint Council Agenda 9/16/20"). As explained above, the Court may consider this public record information referenced in the Amended Complaint on a motion to dismiss. *See Bassett*, 528 F.3d at 430; *Little Traverse Bay Bands of Odawa Indians*, 365 F. Supp. 3d at 872.

Flint $475,625. Flint Council Agenda 9/16/20 at 39. Both cities accepted the funds. Am. Compl. ¶¶ 76, 77, 161, 162.

Both Lansing and Flint also accepted the terms of the grants (the Grant Agreements). *See* Am. Compl. ¶¶ 18, 19. The Grant Agreements each provided that the grants were to be used exclusively for the "public purpose of planning and operationalizing safe and secure election administration" in Lansing and Flint in 2020, and incorporated the respective cities' Safe Voting Plans. Lansing Council Agenda 9/14/20 at 25; Flint Council Agenda 9/16/20 at 39. The Grant Agreements contemplated that all funds would be spent by December 31, 2020, and that by January 31, 2020, grant recipients would provide a report of how the funds were spent, including a certification that their use was consistent with the Safe Voting Plan. Lansing Council Agenda 9/14/20 at 26; Flint Council Agenda 9/16/20 at 40. So long as these and other minimal requirements were met, the grants were irrevocable. Lansing Council Agenda 9/14/20 at 26; Flint Council Agenda 9/16/20 at 40.

Lansing and Flint's administration of the 2020 general election proceeded smoothly and safely, in no small part because the grants provided sufficient funds to allow the cities to respond to the extraordinary circumstances of the moment. Michigan's Board of State Canvassers and Governor Whitmer certified the results of the election on November 23, 2020.[3]

## II.    Procedural Background

Plaintiffs—three individuals who live in Lansing or Flint and an organization calling itself the Election Integrity Fund—filed their original complaint on September 29, 2020. ECF 1. Each

---

[3]    Draft Minutes, Nov. 23, 2020 Meeting of the Board of State Canvassers, https://www.michigan.gov/documents/sos/112320_draft_minutes_708672_7.pdf; Certificate of Ascertainment, https://www.archives.gov/files/electoral-college/2020/ascertainment-michigan.pdf.

individual plaintiff allegedly "oppose[d] the election of progressive candidates in local, state, and federal elections." *Id.* The original complaint contended that the acceptance and use of CTCL's funding for local election administration violated some categorical ban on nongovernmental funding that was unstated but implicit somewhere in the recesses of the Elections Clause, the Supremacy Clause, the Constitution generally, two federal election-modernization statutes, a Michigan state criminal statute, or some combination. *Id.*

Plaintiffs moved for a Temporary Restraining Order, which this Court denied. ECF 11. The Court concluded that plaintiffs did not meet their burden to show a likelihood of success on the merits because their motion identified no language in the Constitution or any cited statute "that explicitly prohibits cities from accepting private grants to administer elections," and on the Court's review, "no such explicit prohibition exists." *Id.*

The parties then briefed the motion for a preliminary injunction, which this Court also denied. ECF 19. There, the Court determined that Plaintiffs did not show a substantial likelihood of success of establishing standing, explaining that Plaintiffs' alleged injury was not individual and personal, was contradicted by their own evidence, and was far too speculative and attenuated.

Plaintiffs sought an injunction pending appeal, which this Court again denied. ECF 27. Plaintiffs had argued that use of the CTCL funds risked the elections being invalidated in Lansing or Flint, which would leave Plaintiffs without congressional representation. The Court found, again, that that failed to establish a cognizable injury in fact because the Court was "not aware of any cases holding that the right to be politically represented is a legally cognizable interest under Article III," and that even if it were, Plaintiffs' injury was "completely hypothetical." ECF 27. Plaintiffs presented the same arguments on a motion for an injunction pending appeal in the Sixth

Circuit, which denied their request. ECF 10-2, *Election Integrity Fund v. City of Lansing*, No. 20-2048 (6th Cir. Oct. 30, 2020). Plaintiffs then voluntarily dismissed their appeal. ECF 13, *id.*

Two days after the general election was successfully administered with the help of CTCL's emergency grants, Plaintiffs filed this Amended Complaint on November 5. The Amended Complaint seeks declaratory and injunctive relief under new and even more unconventional theories of harm—this time, that CTCL's grants interfere with a "social contract" between plaintiffs and the federal government created by some combination of the Elections Clause, the First, Ninth, and Fourteenth Amendments, and federal common law. And Plaintiffs once again argue that CTCL's grants will harm them based on a purported risk that the House or Senate will not allow their congressional representatives to be seated as a result of the invalid elections in Lansing and Flint.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Laborers' Local 265 Pension Fund v. iShares Tr.*, 769 F.3d 399, 403 (6th Cir. 2014) (internal quotation marks omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Accordingly, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to overcome a motion to dismiss. *Id.* Courts may look beyond the complaint to public records, the record of the case, and exhibits attached to a defendant's motion to dismiss that are referred to in the complaint and central to its claims without converting the motion to one for summary judgment so long as the materials are referred to in the complaint and are central to its claims. *Bassett v. Nat'l College Athletic Ass'n.*, 528 F.3d 426, 430 (6th Cir. 2008); *accord Little*

5

*Traverse Bay Bands of Odawa Indians v. Whitmer*, 365 F. Supp. 3d 865, 872 (W.D. Mich. 2019) (Maloney, J.). Public records that may be considered include "records or reports of administrative bodies" and "the legislative history of laws, rules or ordinances." *Lozar v. Birds Eye Foods, Inc.*, 678 F. Supp. 2d 589, 599 (W.D. Mich. 2009) (Maloney, J.).

Rule 12(b)(1) governs motions to dismiss for lack of subject-matter jurisdiction. Challenges that "attack the complaint on its face," like this one, are handled much like Rule 12(b)(6) motions, treating the complaint's well-pleaded allegations as true. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996).

## ARGUMENT

The Amended Complaint should be dismissed in its entirety for three reasons. First, Plaintiffs' claims seeking declaratory and injunctive relief for Defendants' past conduct are moot. Those are the only two forms of relief Plaintiffs seek, *see* Am. Compl. at 25, so their mootness dooms the entire action. Second, Plaintiffs allege no concrete and particularized injury caused by Defendants' use of the grant funds that could conceivably be redressed by this Court, and they therefore lack Article III standing. For those reasons, Defendants move to dismiss the Amended Complaint under Rule 12(b)(1) for lack of subject-matter jurisdiction. And third, the Amended Complaint should be dismissed under Rule 12(b)(6) because Plaintiffs' allegations fail to state any cognizable legal claim.

**I.    This Court lacks subject-matter jurisdiction over Plaintiffs' claims under Rule 12(b)(1).**

**A.    Plaintiffs' claims for declaratory and injunctive relief are moot.**

"Article III conditions the exercise of federal judicial power on the existence of a live, ongoing case or controversy." *Pettrey v. Enter. Title Agency, Inc.*, 584 F.3d 701, 703 (6th Cir. 2009). "If a case in federal court loses its character as an actual, live controversy at any point

during its pendency," that case is "no longer within the jurisdiction of the federal courts, and therefore must be dismissed." *Id.*

The Amended Complaint requests a declaratory judgment that Defendants' acceptance of grants from CTCL was unconstitutional under the Elections Clause, the First and Ninth Amendments, the Equal Protection Clause, and federal common law. Am. Compl., Prayer for Relief ¶¶ 1-2. Plaintiffs also seek an injunction barring Defendants from "applying for or accepting CTCL grants." *Id.* ¶ 3. These claims for relief do not present an actual, live case or controversy. The election is over, the funds have been spent, and the votes have been counted. Indeed, the results of those counts have already been certified as final and accurate by the Board of State Canvassers. *Supra*, at 3 n.3. The requested injunction would have no effect because it would bar the receipt of funds already received and the spending of funds already spent, for the purpose of carrying out an election that is already complete. And a declaratory judgment would have no effect either—it is anyone's guess whether Lansing or Flint will seek, or any organization will even offer, funding for the next federal election. Such "speculative contingencies afford no basis for [the Court] passing on the substantive issues." *DeFunis v. Odegaard*, 416 U.S. 312, 320 (1974). Plaintiffs' claims for relief are moot and his claims should therefore be dismissed.

**B.    Plaintiffs lack Article III standing.**

To establish Article III standing, Plaintiffs must show (1) a concrete and particularized injury-in-fact, (2) a causal connection between that injury and the challenged conduct, and (3) redressability. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157-58 (2014). This Court already concluded that Plaintiffs have not demonstrated a substantial likelihood of Article III standing in denying their motion for a preliminary injunction and for an injunction pending appeal. *See* ECF 19, 27.

7

The same reasoning requires dismissal of Plaintiffs' Amended Complaint. As discussed below, an ever-growing chorus of federal courts have agreed that similar plaintiffs making similar allegations lacked Article III standing. Most recently, the Third Circuit summarily dismissed nearly identical claims against three Pennsylvania counties because it concluded "there is no injury in fact." ECF 28-1, *Pennsylvania Voters Alliance v. Cty. of Centre*, No. 20-3175 (3d Cir. Nov. 23, 2020) (Bibas, J.). The Sixth and Seventh Circuits, too, have denied injunctions pending appeal in the face of standing arguments much like those here—including in this very case. ECF 10-2, *Election Integrity Fund v. City of Lansing*, No. 20-2048 (6th Cir. Oct. 30, 2020); ECF 5, *Wisconsin Voters Alliance v. City of Racine*, No. 20-3002 (7th Cir. Oct. 23, 2020). Justices Kavanaugh and Alito also rejected applications for injunctive relief pending appellate review on similar facts without even calling for a response, much less referring the case to their colleagues. *Wisconsin Voters Alliance v. City of Racine*, No 20A-75 (U.S. Oct. 29, 2020) (Kavanaugh, J.); *Pennsylvania Voters Alliance v. Centre Cty.*, No. 20A82 (U.S. Nov. 3, 2020) (Alito, J.).

The reason for this unbroken consensus is clear: The Plaintiffs here, like the others who have filed cookie-cutter lawsuits with the same counsel around the country, have failed to carry their burden as to *any* element of the standing analysis. They have not identified any injury in fact, nor have they alleged that any injury would be caused by Defendants or redressable by this Court.

### 1.  Plaintiffs fail to allege injury-in-fact.

Plaintiffs have not alleged an injury-in-fact. "[A]n injury sufficient to satisfy Article III must be 'concrete and particularized' and 'actual and imminent, not conjectural or hypothetical.'" *Susan B. Anthony List*, 573 U.S. at 157-58 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Plaintiffs' first theory of injury seems to be that Defendants' acceptance of CTCL funding interfered with a "social contract" (emanating from various constitutional provisions)

between the United States and individual voters. Their second is that Plaintiffs could be disenfranchised if Congress refuses to seat an elected representative because Lansing and Flint accepted CTCL funding. No court anywhere has accepted either of these theories, and for good reason—those claimed injuries fail to satisfy Article III because they are not concrete or particularized, nor are they actual or imminent.

*First*, Plaintiffs' claimed injuries are not concrete or particularized. Only plaintiffs who are affected "in a personal and individual way" have Article III standing to sue in federal court. *Davis v. Detroit Pub. Schs. Cmty. Dist.*, 899 F.3d 437, 444 (6th Cir. 2018). Impairment of a nebulous "social contract" that supposedly promises each individual voter lawfully conducted elections is precisely the "kind of undifferentiated, generalized grievance about the conduct of government that [courts] have refused to countenance." *Lance v. Coffman*, 549 U.S. 437, 442 (2007) (per curiam) (plaintiff-voters with "no particularized stake in the litigation" lacked standing were the "only injury they allege is that the law . . . has not been followed"). Judge Brann in Pennsylvania rejected a theory of harm similar to the "social contract" argument Plaintiffs make here, explaining that it would lead to the absurd, unsupported result that "any citizen of the United States would have standing to challenge any constitutional violation for any reason." ECF 75 at 12, *Pennsylvania Voters Alliance v. Centre Cty.*, No. 20 Civ. 1761 (M.D. Pa. Oct. 21, 2020). The Third Circuit summarily affirmed that decision. *See* ECF 28-1, *Pennsylvania Voters Alliance v. Cty. of Centre*, No. 20-3175 (3d Cir. Nov. 23, 2020) (Bibas, J.).

The same is true of Plaintiffs' claim that the CTCL grants will delegitimize and invalidate the election. As this Court already observed, there is a dearth of "cases holding that the right to be politically represented is a legally cognizable interest under Article III" in the first place. ECF 27 at 2. And even if that right to political representation were legally cognizable, the loss of that right

would still not be sufficiently concrete and particularized to confer standing because it would be held in common by everyone in the county. *See Gill v. Whitford*, 138 S. Ct. 1916, 1931 (2018) (rejecting theory of statewide harm to interest in collective legislative representation). Several courts have found no Article III standing for this reason in nearly identical cases brought by Plaintiffs' counsel on behalf of similarly situated plaintiffs. Judge Brann—in his decision summarily affirmed by the Third Circuit—held that harm by election-invalidation "constitutes a generalized grievance" because "the Court is not aware of any cases holding that the right to be politically represented is a legally cognizable interest under Article III," "any right to political representation would be one 'held in common by all members' of the county," and thus the claimed "injury is not sufficiently particularized" to confer standing. ECF 75 at 11, *Pennsylvania Voters Alliance v. Centre Cty.*, No. 20 Civ. 1761 (M.D. Pa. Oct. 21, 2020). Judge Mazzant, too, held that "[m]erely alleging that the grants may influence the election result and lead to possible disenfranchisement is not an injury-in-fact." ECF 28 at 7, *Texas Voters Alliance v. Dallas Cty.*, No. 20 Civ. 775 (E.D. Tex. Oct. 20, 2020). And Judge Davis held a similar argument about Minnesota plaintiffs' "interest in their collective representation in government" to be an "undifferentiated, generalized grievance" that failed to establish Article III standing. ECF 25 at 20-21, *Minnesota Voters Alliance v. City of Minneapolis*, No. 0:20-cv-2049 (D. Minn. Oct. 16, 2020).

*Second*, as this Court has already recognized, Plaintiffs' purported potential injuries are too speculative to support standing. *See* ECF 27 at 2 (claimed injury is "completely hypothetical"). Plaintiffs cannot establish Article III standing through baseless, speculative hypotheticals that a "congressional house" might invalidate orderly and successful elections in Flint and Lansing and "refuse[] to seat the representative" because the cities received CTCL grants. Am. Compl. ¶¶ 102,

10

103, 118. That alleged harm is wildly conjectural and speculative rather than "actual," "imminent," or "certainly impending," and so cannot satisfy Article III. *See Clapper v. Amnesty Int'l. USA*, 568 U.S. 398, 410, 414 n.5 (2013). Indeed, Plaintiffs' claimed election-invalidation injury is not merely speculative—it is fictional.[4] There is no basis in law or history to support Plaintiffs' sensationalist suggestion that a municipality's receipt of private funding for neutral, generally applicable election administration affords any basis whatsoever to doubt the integrity or outcome of the election.

For that reason, neither Plaintiffs here nor the plaintiffs in numerous other similar lawsuits have managed to offer even a remotely plausible legal argument to support this idea. Instead, the same, utterly meritless argument Plaintiffs advance here has failed to persuade federal district courts, federal courts of appeals, and two Justices of the U.S. Supreme Court to grant plaintiffs any relief. Judge Brann held that the theory "that a party will challenge the election if this Court does not grant [p]laintiffs' motion and that challenge will result in the invalidation of the election results" relied on a "highly attenuated causal chain of events" and was, like the plaintiffs' other theories, "too speculative and not sufficiently imminent to support standing." ECF 75 at 13-14, *Pennsylvania Voters Alliance*, No. 20 Civ. 2761. Judge Mazzant noted that a similar election-invalidation theory was "so speculative" that the plaintiffs there "could only characterize this series of unfortunate events as 'possible.'" ECF 28 at 37, *Texas Voters Alliance*, No. 20 Civ. 775 (discussing threat of irreparable harm). Judge Gergel in South Carolina rejected the same election-invalidation argument while denying a motion for a temporary restraining order, calling it

---

[4] Plaintiffs' allegations that congressional delegations will not be seated due to election invalidation are not entitled to a presumption of truth, even at the pleading stage. *See Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 246-47 (6th Cir. 2012) (legal conclusions not entitled to the presumption of truth); *see also* ECF 28 at 10, *Texas Voters Alliance v. Dallas Cty.*, No. 4:20-cv-775 (E.D. Tex. Oct. 20, 2020) (declining to "meddle in Congress's internal governance or provide an advisory opinion on th[is] potential issue").

11

"dubious, at best." ECF 5 at 3, *South Carolina Voter's Alliance v. Charleston Cty.*, No. 2:20-cv-3710 (D.S.C. Oct. 26, 2020). Other plaintiffs making the same arguments in support of injunctions pending appeal in the Third, Sixth, and Seventh Circuits, and in the U.S. Supreme Court, have all failed to convince the courts that their arguments have any merit whatsoever. ECF 28-1, *Pennsylvania Voters Alliance v. Cty. of Centre*, No. 20-3175 (3d Cir. Nov. 23, 2020); ECF 5, *Wisconsin Voters Alliance v. City of Racine*, No. 20-3002 (7th Cir. Oct. 23, 2020); ECF 10-2, *Election Integrity Fund v. City of Lansing*, No. 20-2048 (6th Cir. Oct. 30, 2020); *Wisconsin Voters Alliance v. City of Racine*, No. 20A-75 (U.S. Oct. 29, 2020) (Kavanaugh, J.); *Pennsylvania Voters Alliance v. Centre Cty.*, No. 20A82 (U.S. Nov. 3, 2020) (Alito, J.).[5]

### 2.      Any injury is not "fairly traceable" to CTCL's grants.

Plaintiffs' conjectural election-invalidation harm also would not be "fairly traceable" to Flint and Lansing's acceptance of CTCL's election grants for similar reasons. *Lujan*, 504 U.S. at 560. Rather, it would be "th[e] result [of] the independent action of some third party"—a house of Congress, presumably—"not before the court." *Id.* That disconnect means that Plaintiffs' outlandish theory fails to satisfy the traceability element of standing as well.

### 3.      The relief Plaintiffs request would not redress their claimed harm.

Finally, and again for similar reasons, Plaintiffs also cannot satisfy the redressability element of Article III standing. *See Lujan*, 504 U.S. at 561. Plaintiffs seek a declaratory judgment that Defendants acted unconstitutionally in accepting the grants and an injunction preventing

---

[5] Plaintiffs' vague allegations that Defendants' receipt of CTCL's grants somehow impairs their "fundamental right to vote" does not establish Article III injury-in-fact. *See, e.g.*, Am. Compl. ¶¶ 86, 87, 171, 172. It is facially implausible that Plaintiffs' right to vote could be impaired by election administration funds that made it easier and safer for them to vote. Plaintiffs cannot, and do not, allege any "facts showing disadvantage of themselves as individuals" with respect to voting. *Gill*, 138 S. Ct. at 1931 (citations omitted). For all those reasons, Plaintiffs cannot establish an Article III injury.

Defendants from accepting election-administration grants in the future. Am. Compl. at Prayer for Relief ¶¶ 1-3. Because the election has already happened and only Lansing and Flint are before the Court, neither declaratory nor injunctive relief would be at all "likely" to remedy Plaintiffs' claimed election-invalidation injury—or, for that matter, *any* of the injuries Plaintiffs claim to have suffered when Lansing and Flint accepted and spent those funds. *Lujan*, 504 U.S. at 561.

* * * * *

For all those reasons, this Court lacks subject-matter jurisdiction and should dismiss the Amended Complaint with prejudice under Rule 12(b)(1).[6]

## II.     The amended complaint should be dismissed for failure to state a claim under Rule 12(b)(6).

Even if the Plaintiffs could somehow surmount the fatal jurisdictional problems described above, Counts I and II of Plaintiff's Amended Complaint fail to state a plausible claim for relief and therefore must be dismissed under Rule 12(b)(6).

### A.     Plaintiffs' legal theory under Count I fails to state a claim under the Elections Clause, the First and Ninth Amendments, or federal common law.

Count I of the Amended Complaint introduces a novel and mostly incomprehensible theory that Defendants' acceptance of CTCL's grants violates the Elections Clause, the First and Ninth Amendments, and federal common law. Because CTCL sets "conditions" on the use of its funds, Plaintiffs allege, "[t]he private entity is overseeing the conduct of federal elections in contradiction of the Elections Clause and the rights reserved to the people under the Ninth Amendment," and also in "interfere[nce] with the social contract of the Elections Clause governing the compelling

---

[6] The foregoing analysis applies to both the individual plaintiffs and the Election Integrity Fund. As a membership association, the Election Integrity Fund needs to show standing either "in its own right" or "as the representative of its members." *Warth v. Seldin*, 422 U.S. 490, 511 (1975). But it has asserted no harm to its own interests. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982). And Election Integrity Fund can assert a claim on behalf of plaintiffs (its only identified members) only if they would independently have Article III standing, which they do not.

interest of the United States with the voter regarding the integrity of federal elections and the voter intertwined with the voter's fundamental right to vote." Am. Compl. ¶¶ 85, 86. Nothing about that unconventional patchwork theory states a plausible claim.

*First*, there is no contradiction between the Elections Clause and Defendants' acceptance of CTCL's grants. The Elections Clause empowers states to prescribe the "Times, Places and Manner of holding Elections for Senators and Representatives" and allows Congress, if it wishes, "at any time by law [to] make or alter such Regulations." U.S. Const. art. I, § 4, cl. 1. The grants Defendants accepted obviously do not affect the "times" or "places" of the election, and they do not affect its "manner" as that term has been interpreted by the Supreme Court. *See Cook v. Gralike*, 531 U.S. 510, 523-24 (2001) (taking the "commonsense view" that regulation of the "manner" of federal elections "encompasses matters like 'notices, registration, supervision of voting, protection of voters, prevention of fraud and corrupt practices, counting of votes, duties of inspectors and canvassers, and making and publication of election returns'" (citation omitted)). The focus of the Elections Clause is the balance of authority between states and Congress in regulating federal elections; the Elections Clause says nothing about how local governments fund the administration of their elections systems and does not contemplate any kind of "contract" between the United States and an individual voter. *See Arizona v. Inter Tribal Council*, 570 U.S. 1, 8 (2013).

Nevertheless, Plaintiffs further allege that CTCL is "*overseeing the conduct of federal elections* in contradiction of the Elections Clause." Am. Compl. ¶ 85 (emphasis added). That allegation fails to state a claim for the additional reasons that it is factually implausible, and is again contradicted by the evidence Plaintiffs incorporate into their complaint. *Cf.* ECF 19 (noting Plaintiffs' "own data" contradicts the[ir] allegations). The Grant Agreements between CTCL and

Defendants, relied on in the Amended Complaint and attached to this motion, provide for no such election oversight by CTCL. Instead, the Grant Agreements require that Defendants use the funds pursuant to their own Safe Voting Plan—that is, in the manner Defendants themselves decided—in order to help run a safe, efficient election during a global pandemic. *See* Lansing Council Agenda 9/14/20 at 25-26; Flint Council Agenda 9/16/20 at 39-40. Then, after the funds are spent, the Grant Agreements require Defendants to produce a brief report explaining and documenting how grant funds were expended in support of each city's Safe Voting Plan. *See* Lansing Council Agenda 9/14/20 at 26; Flint Council Agenda 9/16/20 at 40. If CTCL determines that the terms of the Grant Agreement were not met, it may ask for the return of the funds. *See* Lansing Council Agenda 9/14/20 at 26; Flint Council Agenda 9/16/20 at 40. Those provisions plainly do not allow CTCL to "oversee[] the conduct of federal elections" or "interfere[] with the social contract" (whatever that may mean). Am. Compl. ¶¶ 85, 86. And nothing in the Constitution or any precedent related to the Elections Clause supports Plaintiffs' brand-new argument that the reporting and return provisions of the Grant Agreements transform CTCL's funding into a constitutional violation.

*Second*, none of Plaintiffs' factual allegations about CTCL's grants state a claim under the First Amendment. The First Amendment, in conjunction with the Fourteenth Amendment,[7] guards against undue burdens on the right to vote. *See Burdick v. Takushi*, 504 U.S. 428, 434 (1992). But it has no application here, where Plaintiffs do not actually allege any burden on their right to vote (and indeed, Defendants' receipt of CTCL grants made it easier and safer for all their citizens to

---

[7] A claim of unjustified burden on the fundamental right to vote arises under the First and Fourteenth Amendment. *See Burdick v.* Takushi, 504 U.S. 428, 434 (1992). Accordingly, the deficiencies in Plaintiffs' separate Fourteenth Amendment claim doom its First Amendment claim as well, and vice versa. *See* Section II.B, *infra.*

vote, *see* note 5, *supra*). At most, Plaintiffs allege that their vote may not count if the election is somehow later invalidated. *See* Am. Compl. ¶ 100. Unjustified speculation that a ballot cast without restrictions may later be invalidated is not the kind of speech or associational right the First Amendment protects. *See Anderson v. Celebrezze*, 460 U.S. 780, 793-94 (1983) ("A burden that falls unequally on new or small political parties or on independent candidates impinges, by its very nature, on associational choices protected by the First Amendment.").[8] What is more, there is no basis in First Amendment precedent or in historical practice to support the conjectural idea that municipal receipt of private election grants will somehow prompt election invalidation by Congress. Because Plaintiffs do not allege a cognizable burden on their right to vote, Plaintiffs fail to state a First Amendment claim.

*Third*, Plaintiffs' Ninth Amendment argument—that Defendants' receipt of CTCL's grants violated some theoretical "right to vote as intertwin[ed] with the right to participate in an election process" under a "social contract" derived from the Ninth Amendment—is contrary to black-letter law. Am. Compl. ¶¶ 32, 99. Simply put, Defendants' receipt of CTCL grants "does not violate Plaintiff[s'] rights under the Ninth Amendment because the Ninth Amendment does not confer substantive rights." *Cooper Butt ex rel Q.T.R. v. Barr*, 954 F.3d 901, 908 (6th Cir. 2020); *Gibson v. Matthews*, 926 F.2d 532, 537 (6th Cir. 1991). Indeed, "the Ninth Amendment 'has never been recognized as independently securing any constitutional right, for purposes of pursuing a civil rights claim.'" *Richards v. Snyder*, No. 14 Civ. 84, 2015 WL 3658836, at *14 (W.D. Mich. June 12, 2015) (quoting *Strandberg v. City of Helena*, 791 F.2d 744, 748 (9th Cir. 1986)).[9]

---

[8] Indeed, the Amended Complaint abandons Plaintiffs' previous, and equally baseless, allegations that CTCL's grants were "targeted" at "progressive cities." ECF 19 at 4 (rejecting such allegations as "unsupported").

[9] Plaintiffs' stray invocations of "federal common law" as the place where their claims (or sometimes their "social contract") are "embodied" do not support a plausible claim for relief either.

Because Plaintiffs cannot establish a plausible claim that CTCL's grants violate the Elections Clause, the First Amendment, the Ninth Amendment, or federal common law, the Court should dismiss Count I.

### B.    Plaintiffs fail to state a claim under the Fourteenth Amendment.

In Count II, Plaintiffs allege a Fourteenth Amendment equal protection claim. That claim—which regurgitates verbatim many of the allegations in Count I, but swaps the Fourteenth Amendment in place of the other constitutional provisions—likewise lacks merit under any cognizable theory of equal protection.

Plaintiffs fail to allege any of the well-established prerequisites for an equal protection violation. As the Sixth Circuit has explained, "[t]he Equal Protection Clause applies when a state either classifies voters in disparate ways, or places restrictions on the right to vote." *Obama for Am. v. Husted*, 697 F.3d 423, 428 (6th Cir. 2012) (citation omitted); *see also Davis v. Prison Health Servs.*, 679 F.3d 433, 438 (6th Cir. 2012) ("The Equal Protection Clause of the Fourteenth Amendment 'protects against invidious discrimination among similarly-situated individuals or implicating fundamental rights.'" (quoting *Scarbrough v. Morgan Cty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006))). Here, Plaintiffs do not adequately allege either disparate treatment or a burden on their voting rights.

The crux of Count II appears to be Plaintiffs' conjecture that they will be treated differently from voters in other cities because Congress might invalidate Defendants' elections based on their receipt of CTCL grants, thereby depriving Plaintiffs—but not necessarily other Michigan voters—

---

*See* Am. Compl. ¶¶ 94, 108, 109. "There is no federal general common law." *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). And in the limited areas where courts do "decide to fashion rules of federal common law, the guiding principle is that a significant conflict between some federal policy or interest and the use of state law . . . must first be specifically shown." *Atherton v. FDIC*, 519 U.S. 213, 218 (1997). Plaintiffs obviously fail to identify anything like that here.

of representation in Congress. *See* Am. Compl. ¶¶ 191, 194. This theory is not only wildly speculative, *see supra* Part I.B (noting federal courts' uniform rejection of invalidation theory on standing grounds), and legally and historically unprecedented, *see id.*, but it also fails as a matter of law under fundamental equal protection principles.

*First*, Plaintiffs fail to allege that the Defendants in this case—the cities of Flint and Lansing—subjected them to any improper classification or differential treatment compared to other voters *within* their cities. *See Obama for Am.*, 697 F.3d at 428; *see also Marion Cty. Democratic Party v. Marion Cty. Election Bd.*, No. 01 Civ. 1963, 2002 WL 1354717, at *13 (S.D. Ind. May 9, 2002) ("[D]ifferential treatment is an essential component of an equal protection claim."); *Donald J. Trump for President, Inc. v. Boockvar*, No. 20 Civ. 966, 2020 WL 5997680, at *43 (W.D. Pa. Oct. 10, 2020) (dismissing equal protection claims where "Plaintiffs . . . have shown no constitutionally significant differential treatment at all."). Defendants do not violate equal protection rights by treating all of their voters the same.

*Second*, to the extent Plaintiffs base their claim on the fact that Flint and Lansing, but not other cities in Michigan, received CTCL grants, that allegation also fails to state a claim. It is well established that, consistent with equal protection, "local entities, in the exercise of their expertise, may develop different systems for implementing elections," *Bush*, 531 U.S. at 109, especially when it comes to "general administrative decisions" like Defendants' policy choices about whether to accept private election funds. *See Hunter v. Hamilton Cty. Bd. of Elections*, 635 F.3d 219, 235 (6th Cir. 2011). The Equal Protection Clause does not "foist[]" uniformity across "all [municipalities] at once" when it comes to election administration. *See Short v. Brown*, 893 F.3d 671, 679 (9th Cir. 2018). To the contrary, "local variety in voting systems can be justified by concerns about *cost*, the potential value of *innovation*, and so on." *Wexler v. Anderson*, 452 F.3d

1226, 1231-33 (11th Cir. 2006) (emphasis added); *Donald J. Trump for President, Inc. v.*

*Pennsylvania*, No. 20-3371, 2020 WL 7012522, at *6 (3d Cir. Nov. 27, 2020) ("[L]ocal differences

in implementing statewide [voting] standards do not violate equal protection."); *Donald J. Trump*

*for President, Inc. v. Boockvar*, No. 20 Civ. 966, 2020 WL 5997680, at *44 (W.D. Pa. Oct. 10,

2020) ("[M]any courts that have recognized that counties may, consistent with equal protection,

employ entirely different election procedures and voting systems within a single state.") (collecting

cases).

      Accordingly, the Equal Protection Clause does not limit the "flexibility" of "local entities"

to make policy choices about how to fund their elections, even if the "exercise of [that] expertise"

may sometimes lead to "[a]rguable differences" across municipalities within the State. *See Ne.*

*Ohio Coal. for the Homeless v. Husted*, 837 F.3d 612, 636 (6th Cir. 2016). There is therefore no

precedent in law or historical practice for requiring local entities within the same state to fund

election administration equally or from identical sources. Such "garden variety" variation between

localities is "simply not a matter of federal constitutional concern." *Cf. Warf v. Bd. of Elections of*

*Green Cty.*, 619 F.3d 553, 559 (6th Cir. 2010); *Boockvar*, 2020 WL 5997680, at *49. Defendants'

acceptance of CTCL grants is wholly consistent with equal protection.

      *Finally*, in the alternative, Plaintiffs seem to suggest that Defendants violated equal

protection by burdening Plaintiffs' fundamental right to vote. *E.g.*, Am. Compl. ¶ 172. Any such

claim fails, however, for the same reasons Plaintiffs cannot state a claim under the First

Amendment. *See Burdick*, 504 U.S. at 434 (outlining "flexible standard" for evaluating claims that

state actions burden fundamental right to vote under First and Fourteenth Amendments); *Obama*

*for Am.*, 697 F.3d at 428 (noting *Anderson-Burdick* applies to Fourteenth Amendment equal

protection claims). Namely, other than the speculative risk that a house of Congress may invalidate

19

the results of the election, Plaintiffs fail to allege that their right to vote was burdened at all. *See supra*, Part II.A. In the absence of any alleged burden on Plaintiffs' right to vote, Defendants' receipt of CTCL grants must be reviewed under "a straightforward rational basis standard." *Obama for Am.*, 697 F.3d at 429. And Defendants' acceptance and implementation of election grants unquestionably bears a "rational relationship" to the "legitimate state end" of administering safe and efficient elections during an unprecedented public health crisis. *See McDonald v. Bd. of Election Comm'rs of Chicago*, 394 U.S. 802, 809 (1969); *Bullock v. Carter*, 405 U.S. 134, 147 (1972) (Texas primary election filing fee system satisfied "rational basis" review because "filing fees serve to relieve the State treasury of the cost of conducting the primary elections, and this is a legitimate state objective"); *Shoemaker v. City of Howell*, 795 F.3d 553, 567 (6th Cir. 2015) (noting "health, safety, and welfare of the public" are "legitimate governmental interests" under rational basis review).

The Court should dismiss Count II because Plaintiffs fail to state a claim that they were treated differently or that their fundamental voting rights were burdened under the Equal Protection Clause.

## CONCLUSION

This Court should dismiss the Amended Complaint for lack of subject-matter jurisdiction under Rule 12(b)(1). Even if Plaintiffs could somehow clear the jurisdictional bar, they have failed to plead a plausible claim for relief and dismissal is also required under Rule 12(b)(6).

Respectfully Submitted,

By:    <u>/s/ *Christopher M. Trebilcock*</u>
        Christopher M. Trebilcock (P62101)
        Vincent C. Sallan (P79888)
        CLARK HILL PLC
        500 Woodward Avenue – Suite 3500
        Detroit, Michigan 48226
        (313) 965-8300
        ctrebilcock@clarkhill.com
        vsallan@clarkhill.com
        *Attorneys for Defendants*

DATE:  December 4, 2020

21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 4, 2020, I electronically filed the foregoing paper using the Court's ECF system, which will send notification of such filing to all counsel of record.

/s/ Christopher M. Trebilcock
Christopher M. Trebilcock (P62101)
Clark Hill PLC